IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  04-D-486 (CBS)

KEVIN MAYS,

      Plaintiff(s),

v.

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut
Corporation,

      Defendant(s).

_____

**ORDER**

_____

I.      INTRODUCTION

THIS MATTER comes before the Court on Defendant's Motion for Summary

Judgment, filed September 8, 2004 ("Motion").  This is an auto insurance coverage

dispute in which Plaintiff seeks reimbursement for injuries sustained in an accident

pursuant to an uninsured motorist ("UM") endorsement in an insurance policy issued by

Defendant.  Defendant asserts that Plaintiff is not entitled to UM coverage under the

policy because his accident did not arise out of the "use" of the insured vehicle.

Pursuant to Rule 56(c), the Court may grant summary judgment where "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and the

. . . moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see*

*also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment*

*Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir.

2000).  "When applying this analysis, the court must 'view the evidence and draw all

reasonable inferences therefrom in the light most favorable to the party opposing

summary judgment.'"  *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d

1138, 1148 (10th Cir. 2000) (quotation omitted).  "Only disputes over facts that might

affect the outcome of the suit under the governing law will properly preclude the entry of

summary judgment."  *Id.*

II.     FACTUAL BACKGROUND

        Defendant's Motion includes a Statement of Undisputed Material Facts, and

Plaintiff admits that the facts included in that Statement are undisputed.[1]  However,

Plaintiff's Brief in Opposition to Motion for Summary Judgment ("Response") includes a

Statement of Additional Disputed Facts.  In its Reply, Defendant acknowledges that the

facts set forth in Plaintiff's Statement of Additional Disputed Facts are, in fact, disputed,

but maintains that those facts, even if true, are immaterial.  Defendant states in its

Reply that it will consider those disputed facts true for purposes of disposition of its

Motion for Summary Judgment.  Therefore, for purposes of ruling on Defendant's

Motion for Summary Judgment, the Court will consider the following undisputed facts:

        Plaintiff is a long-haul commercial truck driver and regularly drives long

distances.  On June 27, 1999, Plaintiff was transporting produce from California to

Colorado in an 18 wheel tractor-trailer truck designed and intended for long, multi-state

---

        [1]Plaintiff does dispute, however, that the UM coverage in Defendant's Policy is
the only relevant portion of the Policy that must be considered and asserts that
consideration of additional portions of the Policy is necessary to the analysis of this
case.

trips (the "truck") when he stopped at a gas station in Georgetown, Colorado.  The truck

Plaintiff was driving is routinely used for long distance transport of goods.  The truck did

not have a restroom or telephone.  Plaintiff was driving alone, and pursuant to the

Department of Transportation, he was required to stop for driving breaks at regular

intervals.  Plaintiff parked the truck in a gravel lot approximately 70-75 feet from the

entrance to the gas station, which was the only space provided for large trucks.  Plaintiff

left the truck idling, and entered the gas station to use the restroom and make a

telephone call.  Plaintiff was transporting produce and he did not want to stop any

longer than absolutely necessary because of the risk that the cargo would spoil.  After a

few minutes, Plaintiff exited the gas station and was walking across the paved gas

station parking lot towards the truck when he was struck and injured by a vehicle that

was driven by an uninsured motorist.  Plaintiff was to continue to Denver to make his

delivery that same day.

Defendant issued a commercial automobile policy to Plaintiff's employer that

contained an endorsement for uninsured / underinsured motorist coverage pursuant to

C.R.S. § 10-4-609 (the "Policy").  Plaintiff obtained a default judgment against the

uninsured motorist in the amount of $328,810.59, which he now seeks to recover from

Defendant pursuant to the UM coverage endorsement in the Policy.

C.R.S. § 10-4-609(1)(a) provides:

> (1)(a) No automobile liability or motor vehicle liability policy
> insuring against loss resulting from liability imposed by law
> for bodily injury or death suffered by any person arising out
> of the ownership, maintenance, or use of a motor vehicle
> shall be delivered or issued for delivery in this state with
> respect to any motor vehicle licensed for highway use in this

> state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 42-7-103(2), C.R.S., under provisions approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; except that the named insured may reject such coverage in writing.

The Policy endorsement for UM coverage states in relevant part:

### A.  Coverage

> We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle."  The damages must result from "bodily injury" sustained by the "insured" caused by an "accident."  The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle". . . .

### B.  Who Is An Insured

> 1. You [the Named Insured . . . ]
> 2.  If you are an individual, any "family member"
> 3.  Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". . . .

III.    ANALYSIS

Defendant asserts that UM coverage does not extend to the accident in this case because Plaintiff's injuries did not arise from the "use" of the insured vehicle.   When interpreting the insurance policy at issue in this diversity case, we apply Colorado law as announced by the Colorado Supreme Court.  *Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir. 1994).  The Colorado Supreme Court recently stated that a plaintiff is entitled to recover under the UM provisions of a policy entered pursuant to C.R.S. § 10-4-609(1)(a), "(1) where the motor vehicle is being used in a manner reasonably

-4-

foreseeable at the time the parties contracted for the insurance and (2) the 'use' of the vehicle is inextricably linked to the plaintiff's injury . . .." *State Farm Mut. Auto. Ins. Co. v. Kastner*, 77 P.3d 1256, 1258 (Colo. 2003). Defendant contends that the insured truck had no role or involvement in Plaintiff's accident and that there is no causal nexus between the truck and Plaintiff's injuries. Plaintiff asserts that the truck was being "used" in a foreseeable manner at the time of the accident, and that the "use" of the truck is inextricably linked to his injuries.

The Colorado Supreme Court defines "use" broadly. *Aetna Casualty & Surety Co. v. McMichael*, 906 P.2d 92, 102 (1995). Determining whether an insured vehicle was being "used" in a foreseeable manner at the time of the accident requires examination of all the factual circumstances. *McMichael*, 906 P.2d at 102. Defendant notes that Plaintiff was not even in the same parking lot where the truck was parked when he was injured. While proximity to the vehicle may indicate use, "it is only one factor to be weighted as part of the totality of the circumstances present." *Id.* at 103. Equally important is the activity the claimant was engaged in at the time of the accident, the particular characteristics of the vehicle and the intentions of the parties to the insurance contract. *Id.* at 102-03.

In *Kastner*, the Colorado Supreme Court addressed whether the vehicle in question was being "used" in a reasonably foreseeable manner where an assailant kidnapped the claimant while she was entering the vehicle and then drove her to a remote location and sexually assaulted her in the vehicle. *Kastner*, 77 P.3d at 1258. The insured vehicle in *Kastner* was a non-commercial vehicle that the Supreme Court

found had "no obvious inherent use apart from its purpose as a mode of transportation." *Id.* at 1262.  The Supreme Court concluded that the vehicle was not being "used" in a manner contemplated by the policy at the time of the assault.  *Id.* at 1263.  In contrast, the Supreme Court found that the claimant in the *McMichael* case was using the insured vehicle in a reasonably foreseeable manner.  *McMichael*, 906 P.2d at 103.  *McMichael* involved a commercial vehicle equipped with an overhead beacon and emergency flashers.  *Id.* at 93.  In that case, the claimant parked the vehicle on the highway, left it running, activated the emergency flashers and began to repair concrete joints in the median of the highway some distance from the vehicle when he was hit by another vehicle.  *Id.*  The Supreme Court determined that the claimant in *McMichael* was "using" the truck at the time of the accident and concluded that because the truck was modified with warning devises, it was foreseeable that the truck would be used in contracting and construction activities at the time the parties entered the insurance contract.  *Id.* at 103.

Here, the insured truck was designed to transport goods over long distances. The truck did not have a restroom.  I agree with Plaintiff that it is foreseeable that over the course of long road trips, drivers will necessarily need to stop the vehicle for breaks. Indeed, the parties agree for purposes of disposition of Defendant's Motion that Department of Transportation regulations require drivers to stop for breaks at regular intervals.  In this case, Plaintiff was driving from California to Denver when he stopped his truck near a gas station and, while the truck was still running, entered the gas station to use the restroom and make a telephone call.  Plaintiff was transporting

produce and did not stop any longer than absolutely necessary because of the risk that

the cargo would spoil.  Plaintiff's break lasted a few minutes, and at the time of the

accident, Plaintiff was returning to his truck in order to resume his trip to Denver.

Considering the activity Plaintiff was engaged in at the time of the accident and the

characteristics of the insured vehicle, under the circumstances of this case, I find that

Plaintiff's use of the truck was "conceivable and foreseeable at the time the parties

entered the insurance contract."  *McMichael,* 906 P.2d at 103; *see also Kohl v. Union*

*Ins. Co.*, 731 P.2d 134 (Colo. 1986); *Titan Construction Co. v. Nolf*, 183 Colo. 188, 193-

94, 515 P.2d 1123, 1125-26 (1973).

Next I address the requirement that the "use" of the insured vehicle be

"inextricably linked to the plaintiff's injury . . .."  *Kastner*, 77 P.3d at 1258.  To establish a

causal connection between the injury and the use of the vehicle a claimant must show

"that the accident would not have occurred but for the vehicle's use."  *Id.* at 1264

(quoting *McMichael*, 906 P.2d at 103).  Defendant contends that although Plaintiff was

walking to his truck when he was injured, his connection with the truck is too attenuated

to trigger UM coverage.  Defendant asserts that the fact that a person travels to the

location of his or her accident by car "is simply not enough to render the accident

covered . . . ."  In this case, however, Plaintiff would not have been walking back to the

truck but for his use of the vehicle to transport goods.  I reject Defendant's contention

that "it was but a fortuitous circumstance that [Plaintiff's] ultimate destination was his

employer's truck."  Plaintiff was walking back to the truck in order to continue his

transport of goods to Denver when he was struck by an uninsured driver.  For purposes

of this motion for summary judgment, the parties agree that Plaintiff did not stop any

longer than absolutely necessary because of the risk that the cargo he was transporting

would spoil.  I agree with Plaintiff that but for the fact that Plaintiff was using the truck to

transport goods, his injuries would not have occurred.  If find that Plaintiff's use of the

truck is inextricably linked to his injuries.  *See Trinity Universal Insurance Co. v. Hall*,

690 P.2d 227, 228 (Colo. 1984) (finding that plaintiff's injuries arose out of the "use" of

the motor vehicle, because her injuries would not have occurred "except for the use of

the truck for the sale of refreshments.").  *Hall*, 690 P.2d at 231.

Finally, I reject Defendant's assertion that the terms of the Policy limit the scope

of potential UM coverage to "insureds" who are "occupying" a covered automobile.  The

Policy defines the term "occupying" to mean "in, upon, getting in, on, out or off."  As

noted above, the UM coverage section defines "insured" as " . . . [a]nyone else

'occupying' a covered 'auto' . . .."  However, the liability section of the Policy defines

"insured" as ". . . [a]nyone else while using with your permission a covered 'auto' . . .."

The liability section further states that "none of the following are an 'insured':  a.  Any

'trucker' or his agents or employees, other than you or your employees . . .."  Plaintiff is

clearly an "insured" pursuant to the liability section of the Policy.  Colorado law requires

that UM coverage be provided for injuries "arising out of the ownership, maintenance, or

use of a motor vehicle."  C.R.S. § 10-4-609.  Moreover, the Colorado Supreme Court

has held that an insurer cannot provide UM coverage to a more restrictive category of

individuals than those covered by its liability coverage.  *McMichael*, 906 P.2d at 98.  As

Defendant concedes in its reply, under *McMichael* "UM policy language limiting the

definition of an insured to a person 'occupying' a vehicle must also be construed to apply to a person 'using' the vehicle." As noted above, Plaintiff was "using" the truck at the time of the accident, and that "use" was inextricably linked to Plaintiff's accident. *See Kastner*, 77 P.3d at 1258.

IV.   CONCLUSION

Based upon the foregoing, it is

ORDERED that Defendant's Motion for Summary Judgment filed on September 8, 2004, is **DENIED**.  It is

FURTHER ORDERED that Defendant's Motion to Refer Pending Summary Judgment Motion to Magistrate Judge for Advisory Ruling, filed August 22, 2005, is **DENIED AS MOOT**.

Dated:  September 28, 2005

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge